**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

FAMILY FINANCIAL CENTERS LLC,   :
                                       :
                                       :       CIVIL ACTION
                     Plaintiff,      :
                                       :
           v.                   :
                                       :
JAY COX AND MARY COX          :       NO.  14-5330
                                       :
                 Defendants.    :

**<u>MEMORANDUM</u>**

BUCKWALTER, S. J.                                       February 25, 2015

        Currently pending before the Court is Defendants Jay Cox and Mary Cox[1]

("Defendants")'s Motion to Dismiss, or Alternatively, to Decline Jurisdiction and to Transfer

Venue to the Worcester Division of the United States District Court for the District of

Massachusetts pursuant to 28 U.S.C. § 1404.  For the following reasons, the Motion is granted in

part[2] and the case is transferred to the United States District Court for the District of

Massachusetts.

---

[1] Defendants are the Plaintiffs in <u>Jay Cox and Mary Cox v. Family Financial Centers LLC</u>,
Docket Number 14-1516-A, which is currently pending in Massachusetts Trial Court in the
Worcester County Superior Court.  (Joint Status Report, Feb. 4, 2015, Docket No. 14.)  That case
was filed on August 12, 2014.  (Defs.' Mem. Supp. Mot. Dismiss or Transfer Venue, Ex. A.)

[2] Because this case is being transferred to the District of Massachusetts, the Court makes no
finding as to the merits of the portion of Defendants' Motion urging dismissal of this case due to
the related proceeding currently pending in Massachusetts state court.  Accordingly, this Opinion
addresses only that portion of Defendants' Motion urging transfer to the District of
Massachusetts.

I.      **FACTUAL AND PROCEDURAL HISTORY**

Family Financial Centers, LLC ("Plaintiff"), a Delaware limited liability company, is a franchisor engaged in the business of selling rights to open franchise stores that provide the general public with financial services, including check cashing, bill payment, money orders, and debit cards.  (Compl. ¶ 1.)  Plaintiff's principal place of business is in Doylestown, Pennsylvania.  (Id. at ¶ 2.)  Defendants Jay and Mary Cox live in Westborough, Massachusetts.  (Id. at ¶ 3.)  Defendant Jay Cox is the president of Commonwealth Mortgage Lending, a company that works with mortgage lenders to provide financing for residential and commercial loans.  (Id. at ¶ 4.)

On or about October 28, 2013, Plaintiff and Defendants entered into a contract that required Defendants to "identify and acquire a site for the Financial Center within 180 days after the Effective Date" of the contract.  (Id. at ¶¶ 6–7.)  Plaintiff presented several possible sites, but Defendants failed to acquire a site within 180 days of the effective date of the contract.  (Id. at ¶ 8.)  The terms of the contract did not place geographic restraints on where the Defendants' store could be located.  (Id. at ¶ 19.)  The contact summary pages, however, list the "Site Selection Area" as "Worcester County, TBD."  (Compl. Ex. A, Family Financial Centers LLC Agreement at Summary Pages.)  The Franchise Agreement states that "[t]he site must be located within the Site Selection Area identified in the Summary Pages, must meet FFC's Standards for the Financial Center size and location, and must otherwise be mutually acceptable to you and to FFC."  (Id. at Section 3.A, Development Procedures: Site Selection.)

In December 2013, Plaintiff presented Defendants with a possible site near a property Defendants owned in Worcester, Massachusetts (the "Ace Conversion Site"), which was run by Ace Cash Express.  (Compl. ¶ 11.)  Plaintiff suggested the site because it met Plaintiff's standards ("FFC Standards") for a store site and had a good location, clean operation, good

customer base, and a profitable history.  (Id.)  Defendants rejected the Ace Conversion Site because they believed there would be low profitability for a high purchase price, and asked Plaintiff to find a higher volume site with higher profitability.  (Id. at ¶ 12.)  Defendants refused to listen to a proposal that Plaintiff was willing to negotiate that would have effectively lowered the purchase price of the Ace Conversion Site.  (Id. at ¶ 13.)  Plaintiff alleges that Defendants' rejection of the Ace Conversion Site cost Plaintiff "a projected minimum of $195,000 in lost profits over the 15-year term of the contract."[3]  (Id. at ¶ 14.)

During March 2014, Defendants told Plaintiff that they were in no rush to select a site for their franchise store, and that Plaintiff and Defendants should keep looking for a site.  (Id. at ¶ 15.)  On or about April 24, 2014, Plaintiff proposed a higher-volume, more profitable site (the "High-Volume Site") in Worcester, Massachusetts, as per the Defendants' request.  (Id. at ¶ 16.)  Defendants rejected the High-Volume Site, citing the purchase price, but without assessing the financial records of the site.  (Id.)  On or about April 24, 2014, Plaintiff presented Defendants with two other site options in Springfield, Massachusetts, about fifty miles away from Defendants' residence.  (Id. at ¶ 17.)  Defendants were not willing to look at the financial information for either site, and rejected both Springfield sites.  (Id. at ¶ 18.)  Defendants' reason

---

[3] It should be noted that the Franchise Agreement states that "you and FFC each waive any right to recover and any right to make claims for punitive, exemplary, pain and suffering, mental distress, incidental, consequential, special loss income, and/or profits, and/or similar damages under any theory whatsoever," on the basis that such claims are "inherently speculative and subject to abuse."  (Compl. Ex. A, Franchise Agreement at ¶ 23, section H.)

There is also a liquidated damages clause which states that "[i]f you fail to open the Financial Center per the terms of this Agreement, then you shall pay FFC as liquidated damages, not as a penalty, $45,000, which equals the minimum royalty amount of $250 per month for the initial term of the Agreement."  (Id. at ¶ 23, section I.)  The liquidated damages clause was apparently waived in the Franchise Agreement Addendum, which states that "FFC agrees to waive the provision for liquidated damages."  (Compl. Ex. B, Franchise Agreement Addendum ¶ 11.)

for rejecting the sites was the distance they would have to travel, even though they did not plan to personally operate the stores on a daily basis.  (Id.)

On May 16, 2014, Defendant requested the return of the franchise fee, which according to the Complaint is non-refundable, even though Plaintiff believes it met the terms of the Franchise Agreement Addendum.  (Id. at ¶ 20.)  The Franchise Agreement Addendum states that "FFC and Franchisee agree to make best efforts to identify as quickly as possible an acquisition opportunity in the markets of Franchisee's interest.  If, by May 15, 2014, we are unable to identify an acquisition that meets FFC standards, Franchisee shall have the option of applying this agreement to an acquisition in another market area, a new store, or receive a refund of their franchise fee . . . in one lump sum payment."  (Compl., Ex. B, Franchise Agreement Addendum ¶ 10.)  At no point during the site selection process did Defendants present Plaintiff with store site proposals, even though the contract obligated them to identify and acquire a site.  (Compl. ¶ 21.)  On or about May 30, 2014, Defendants informed Plaintiff of their intention to abandon their obligation under the contract, and have not opened a franchise location.  (Id. at ¶ 9.)

Plaintiff initiated the current litigation, alleging breach of contract and breach of the implied covenants of good faith and fair dealing, by filing a Complaint in the Court of Common Pleas of Bucks County, Pennsylvania on September 5, 2014.[4]  Defendants removed the case to federal court on September 17, 2014.  Defendants filed an Answer and Counterclaim on October 1, 2014, alleging counterclaims for breach of contract, breach of the implied covenants of good faith and fair dealing, unjust enrichment, and violation of Massachusetts General Laws Chapter 93A.  (Defs.' Answer and Countercl. ¶¶ 18–36.).  Plaintiff filed an Answer to Defendants' Counterclaim and Affirmative Defenses on October 17, 2014.  Plaintiff filed a Motion for

---

[4] Plaintiff filed its action after Defendants had filed suit against Plaintiff in Massachusetts.

Judgment on the Pleadings on October 17, 2014, which Defendants answered on October 31, 2014.[5]

Defendants filed the present Motion to Dismiss or to Transfer Venue to the District of Massachusetts on October 22, 2014.  Plaintiff responded on November 4, 2014, and Defendants submitted a Reply Brief on November 11, 2014.  The Court now turns to a discussion of this Motion with respect to Defendants' request to transfer venue.

## II.    DISCUSSION

Pursuant to 28 U.S.C. § 1404(a), a district court may transfer an action to any other district "where it might have been brought" if this transfer is "for the convenience of parties and witnesses" and "in the interest of justice."  28 U.S.C. § 1404(a); see also Connors v. UUU Prods., No. Civ.A.03-6420, 2004 WL 834726, at *6 (E.D. Pa. Mar. 5, 2004).  The determination of whether to transfer venue pursuant to § 1404(a) is governed by federal law.  See Jumara v. State Farm Ins. Co., 55 F.3d 873, 877–878 (3d Cir. 1995) (federal law applies because questions of venue are procedural, rather than substantive).

Analysis of a request for a § 1404(a) transfer has two components.  First, both the original venue and the requested venue must be proper.  Jumara, 55 F.3d at 879.  In a diversity case, venue is proper in "(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any

---

[5] In light of the jurisdictional and venue questions presented by the parties in this case, the Court has not ruled on Plaintiff's Motion for Judgment on the Pleadings.

5

defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391.

Second, because the purpose of allowing § 1404(a) transfers is "'to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense,'" Pro Spice, Inc. v. Omni Trade Grp., Inc., 173 F. Supp. 2d 336, 339 (E.D. Pa. 2001) (quoting Van Dusen v. Barrack, 376 U.S. 612, 616 (1964)), the Court is required to undertake a balancing test in deciding whether the "interests of justice [would] be better served by a transfer to a different forum." Jumara, 55 F.3d at 879. The Third Circuit has outlined a non-exhaustive list of pertinent public and private interest factors to be weighed in this balancing test. The private interests include: (1) the plaintiff's forum preference as manifested in the original choice; (2) the defendant's forum preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses; and (6) the location of books and records. Id. at 879 (citation omitted). The public interests include: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases. Id. at 879–80 (citation omitted). The burden falls on the moving defendant to show the desirability of transferring venue and to present evidence upon which the court may rely in justifying transfer. Fellner ex rel. Estate of Fellner v. Phila. Toboggan Coasters, Inc., No. Civ.A.05-1052, 2005 WL

2660351, at *4 (E.D. Pa. Oct. 18, 2005).[6]  Notably, analyses of transfers under § 1404(a) are "flexible and must be made on the unique facts of each case."[7]  Job Haines Home for the Aged v. Young, 936 F. Supp. 223, 227 (D.N.J. 1996) (internal quotations omitted).

Plaintiff does not dispute that the case "might have been brought" in Defendants' requested venue of the District of Massachusetts, and argues only that the facts of the case support venue and jurisdiction in Pennsylvania.  (Pl.'s Resp. Opp'n Mot. Dismiss and Transfer Venue 4.).  The Complaint at issue clearly alleges that Defendants are Massachusetts residents, thereby satisfying the requirements for venue in the District of Massachusetts.  (Compl. ¶ 3.) Accordingly, the Court turns to the second part of the inquiry: whether the convenience of the parties and witnesses, as well as the interests of justice, would be served by transferring this case to the District of Massachusetts.  Considering the private and public interests enumerated by the Third Circuit, the Court finds that such a transfer is indeed proper.

A.      **Private Interests**

1.      **Plaintiffs' Choice of Venue**

The analysis commences with an examination of Plaintiff's choice of venue, as manifested by where the suit was originally brought.  As a general rule, a plaintiff's choice of venue is of paramount consideration and "should not be disturbed lightly."  In re Amkor Tech., Inc. v. Sec. Litig., No. Civ.A.06-298, 2006 WL 3857488, at *3 (E.D. Pa. Dec. 28, 2006) (quoting Weber v. Basic Comfort, Inc., 155 F. Supp. 2d 283, 285 (E.D. Pa. 2001)).  "Moreover, where . . .

---

[6] "Appropriate supporting evidence includes documents, affidavits, or statements concerning the availability of material witnesses, relative ease of access to evidence, and business or personal hardships that might result for the moving parties."  Fellner, 2005 WL 2660351, at *4.

[7] The Third Circuit has noted that its extensive enumeration of factors to be balanced makes "a written opinion setting forth the reasons for transfer . . . highly desirable."  Jumara, 55 F.3d at 880 (internal quotations omitted).

the plaintiff files suit in its home forum, that choice is entitled to considerable deference." <u>Am. Argo Corp. v. U.S. Fid. & Guar. Co.</u>, 590 F. Supp. 1002, 1004 (E.D. Pa. 1984) (citation omitted).

Nonetheless, there are circumstances under which a plaintiff's choice of forum is not entitled to significant deference.  For example, "a plaintiff's choice [of forum] receives less weight where none of the operative facts occurred in the selected forum." <u>Fid. Leasing, Inc. v. Metavec Corp.</u>, No. Civ.A.98-6035, 1999 WL 269933, at *2 (E.D. Pa. Apr. 29, 1999); <u>see also</u> <u>Rowles v. Hammermill Paper Co., Inc.</u>, 689 F. Supp. 494, 496 (E.D. Pa. 1988) ("plaintiff's choice of forum merits less deference when none of the conduct complained of occurred in plaintiff's selected forum.") (citations omitted).

Plaintiff, a Delaware corporation, maintains its headquarters in Doylestown, Pennsylvania, and filed suit in the Eastern District of Pennsylvania.  As discussed in detail below, however, the potential franchise sites which Defendants rejected are located in Massachusetts, and Defendants' conduct and most of the facts giving rise to Plaintiff's claims occurred in Massachusetts.  Pennsylvania maintains very little substantive connection to the suit.[8]  Given these circumstances, Plaintiff's choice of forum is not entitled to considerable deference.

---

[8] Plaintiff asserts that "FFC primarily conducted business with the Coxes in Pennsylvania" because Defendants visited Plaintiff's corporate office in Doylestown on October 4, 2013, "for an informational session on the benefits of purchasing an FFC franchise" and during that visit received a copy of Plaintiff's franchise disclosure document and an unexecuted copy of the franchise agreement.  (Pl.'s Answer to Countercl. 1.)  In addition, Plaintiff argues that it did not have a physical presence in Massachusetts during its interactions with Defendants.  (<u>Id.</u>)  Defendants, however, assert that Plaintiff's business broker is located in Massachusetts, as were the potential franchise locations, and that Plaintiff's promotional materials and contract states that Plaintiff would perform market evaluations, select franchise sites, and negotiate premises leases, which in this case would have been in Massachusetts.  (Defs.' Reply 4; Defs.' Mem. Supp. Mot. Dismiss or Transfer Venue 8.)  Thus, while there are some events related to Plaintiff's claims and Defendants' counterclaims that occurred in Pennsylvania, the conduct giving rise to Plaintiff's claims appears to have primarily occurred in Massachusetts.

### 2.     Defendants' Preference

The second factor—a defendant's forum choice—is "entitled to considerably less weight than Plaintiff's, as the purpose of a venue transfer is not to shift inconvenience from one party to another." EVCO Tech. and Dev. Co. v. Precision Shooting Equip., Inc., 379 F. Supp. 2d 728, 730 (E.D. Pa. 2003) (citations omitted).  Nevertheless, for the reasons discussed below, Defendants' preference for a Massachusetts forum weighs in favor of transfer.

### 3.     Whether the Claim Arose Elsewhere

"Typically the most appropriate venue is where a majority of events giving rise to the claim arose." In re Amkor Tech., 2006 WL 3857488, at *5 (citation omitted).  "When the chosen forum has little connection with the operative facts of the lawsuit, such that retaining the action conflicts with the interests in efficiency and convenience, other private interests are afforded less weight." Cancer Genetics, Inc. v. Kreatech Biotech., No. Civ.A.07-273, 2007 WL 4365328, at *5 (E.D. Pa. Dec. 11, 2007) (citations omitted).

Plaintiff, in this case, alleges no facts placing the situs of the material events within the Eastern District of Pennsylvania.  Rather, the allegations regarding Defendants' conduct that form the basis for this suit originated in Massachusetts.  According to Defendants, they signed the contract in Massachusetts, and the parties agree that all the proposed store sites that Defendants rejected are in Massachusetts.  (Defs.' Reply 4; Defs.' Mem. Supp. Mot. Dismiss or Transfer Venue 9; Affidavit of Jay Cox ("Cox Aff.")[9]; Compl. ¶¶ 11, 16–17.)  Defendants, while

---

[9] The copy of Defendant Jay Cox's affidavit attached to Defendants' Motion is not signed, dated, or notarized.  As Plaintiff's counsel has not objected to Defendants' submission of Defendant Jay Cox's unsworn statement in support of Defendants' Motion, the Court will consider it as part of the "[a]ppropriate supporting evidence includ[ing] documents, affidavits, or statements concerning the availability of material witnesses, relative ease of access to evidence, and business or personal hardships that might result for the moving parties." Fellner, 2005 WL 2660351, at *4 (emphasis added).

located in Massachusetts, made their request for a refund of the franchise fee and informed Plaintiff that they did not intend to go through with the franchise contract.  (Compl. ¶¶ 9, 20.) Furthermore, prior to Plaintiff filing the instant case, Defendants filed a lawsuit in Massachusetts state court after Plaintiff did not refund the franchise fee, clearly evidencing what Plaintiff now considers to be a breach of contract for failure to open a store within the time allotted in the contract.  In short, Defendants' alleged failures and wrongdoing occurred solely in Massachusetts.

In response, Plaintiff asserts that this case should be litigated in Pennsylvania because Defendants visited Plaintiff's corporate headquarters in Doylestown, signed a contract making them subject to Pennsylvania law,[10] and availed themselves of the privilege of conducting business in Pennsylvania.  (Pl.'s Resp. Opp'n Mot. Dismiss or Transfer Venue 4.)  Plaintiff's argument, however, largely focuses on why jurisdiction and venue in Pennsylvania were proper in the first place, rather than why Pennsylvania is a more appropriate forum than Massachusetts.

Plaintiff also points out that Defendants communicated with Plaintiff's corporate office "[a]t all times" and that Plaintiff does not have a Massachusetts district office with which Defendants could communicate.  (Id. at 4–5.)  This argument, however, disregards the fact that Defendants' conduct—their rejection of the store sites which purportedly complied with the contract terms, request for refund of the franchise fee, and declaration that they did not wish to go through with the franchise agreement—occurred in Massachusetts, or at the very least originated in Massachusetts, if accomplished using technological means of communication. Furthermore, Defendants indicated that Plaintiff's business broker with whom they worked is located in Massachusetts.  (Defs.' Mem. Supp. Mot. Dismiss or Transfer Venue 4.)  Presumably

---

[10] As discussed below, the Franchise Agreement contains a choice of law clause that selects Pennsylvania state law as the substantive law that would apply in litigation between the parties.

that person conducted at least some contract-related business on Plaintiff's behalf in

Massachusetts.  In sum, Plaintiff's arguments do not undermine the fact that the material and

operative events primarily occurred in Massachusetts and concern potential store sites that are

located in Massachusetts.  Accordingly, this factor weighs in favor of transfer.

### 4.  Convenience of the Parties and Party Witnesses

With respect to the convenience of the parties and party witness factor, Defendants have

a strong argument in favor of transfer.  Defendants and their three children live in Westborough,

which is located in Worcester County in Massachusetts.  (Compl. ¶ 3; Cox Aff. ¶ 2.)  Defendants

own and operate their own business in Westborough.  (Compl. ¶ 4.)  As a result of those

circumstances, Defendants assert that they would be greatly burdened by the costs of lodging,

meals, and transportation for themselves and their counsel, and that they "would be required to

hire round-the-clock child care services for their children during pretrial proceedings and during

trial" if the case were heard in Pennsylvania.  (Defs.' Mem. Supp. Mot. Dismiss or Transfer

Venue 10.)  Defendants concede that Plaintiff would incur some of the same costs if the case is

transferred to the District of Massachusetts, but argue that "operation costs resulting from

litigating in Massachusetts are part of [Plaintiff's] national and international business model."

(Id.)  By contrast, Defendants argue that they would be deprived of their day in court due to the

costs they would incur and the logistic difficulties they would experience if the case is not

transferred to the District of Massachusetts.  (Defs.' Reply 3–4.)  Thus, according to Defendants,

venue should be transferred "because the cost and burden to [P]laintiff of litigating in

Massachusetts will be substantially lower than the cost and burden [D]efendants would incur to

litigate in Pennsylvania, not to mention the disruption in their family life and the deleterious

effect on their mortgage business."  (Defs.' Mem. Supp. Mot. Dismiss or Transfer Venue 11.)

In response, Plaintiff argues that "the balance of [the Jumara factors] favor venue in the Eastern District of Pennsylvania."  (Pl.'s Resp. Opp'n Mot. Dismiss or Transfer Venue 5.)  The Court disagrees.  First, Plaintiff contends that forum selection and choice of law clauses in a contract should be given weight in the Court's consideration of Defendants' Motion.  (Id.)  Forum selection clauses are factors entitled to substantial consideration, though they are not dispositive.  Jumara, 55 F.3d at 880.  Notably, however, the "Governing Law" clause in the contract at issue in this case regards choice of *law*, not choice of *forum*.  (Compl. Ex. A at ¶ 23, section C.)  In relevant part, that clause reads "all claims arising out of or related to this Agreement and the relationship hereby shall be governed by and construed under the substantive laws of the Commonwealth of Pennsylvania."  (Id.)  The "Arbitration" clause states that any arbitration proceeding "shall be held at the offices of the [American Arbitration Association] closest to [Plaintiff's] corporate headquarters."  (Id. at ¶ 23, section B).  Contrary to Plaintiff's assertions, however, the contract does not contain a forum selection clause with respect to litigation.  As the parties did not agree to a forum selection clause for purposes of litigation, and as a court in the District of Massachusetts is capable of applying Pennsylvania law in a contract dispute, Plaintiff's first argument is not persuasive.

Plaintiff's second argument is that Pennsylvania has a legitimate interest in holding [D]efendants answerable in a breach of contract action when its law is applied.[11]  (Pl.'s Resp. Opp'n Mot. Dismiss or Transfer Venue 5.)  This argument does not address the issue of the convenience of the parties and party witnesses, and thus the Court does not discuss it with respect to that issue.

---

[11] As Plaintiff did not indicate with sufficient specificity which arguments address which private or public factors in its Response to Defendants' Motion, the Court has addressed them in the order and in the context in which they appear.  Nonetheless, the Court will also discuss Plaintiff's argument regarding Pennsylvania's interest in the case in Section B.2 below.

Finally, Plaintiff argues that because Defendants "actively sought out a Pennsylvania franchisor and signed a contract governed by Pennsylvania law" it should not now be "a surprise to the Defendants that if they breached the contract they would be held to account in Pennsylvania." (Pl.'s Resp. Opp'n Mot. Dismiss or Transfer Venue 6.) Plaintiff also contests Defendants' assertions about their "national and international business model," arguing that "[e]xcept for the 14 states that require franchise registration and conformity to state law before selling franchises within their borders, [Plaintiff] should never expect to litigate the terms of its contract anywhere outside Pennsylvania." (Id.) However, as mentioned above, Plaintiff is already involved in litigation in Massachusetts because of the case Defendants filed against Plaintiff. Thus, in light of the absence of a litigation forum selection clause in the contract, and in light of Plaintiff's business transactions with out-of-state parties such as Defendants, who have sued Plaintiff in Massachusetts state court, Plaintiff's argument is not persuasive.

In short, the convenience of parties and party-witnesses militates in favor of a Massachusetts forum. As such, the Court weighs this factor in support of Defendants' Motion to Transfer Venue.

### 5.   Convenience of Non-Party Witnesses

The next private factor—the convenience of non-party material witnesses—"is a particularly significant factor in a court's decision whether to transfer." Idasetima v. Wabash Metal Prods., Inc., No. Civ.A.01-97, 2001 WL 1526270, at *2 (E.D. Pa. Nov. 29, 2001) (citing Lindley v. Caterpillar, Inc., 93 F. Supp. 2d 615, 617 (E.D. Pa. 2000)); see also Howell, 1993 WL 387901, at *5 ("The convenience to witnesses weighs heavily in making a determination on whether to grant a motion to transfer venue."). There are many different types of witnesses, however, and each one carries a different weight. "[F]act witnesses who possess first-hand

knowledge of the events giving rise to the lawsuit[] have traditionally weighed quite heavily in the 'balance of convenience' analysis." <u>Affymetrix, Inc. v. Synteni, Inc.</u>, 28 F. Supp. 2d 192, 203 (D. Del. 1998) (citation omitted).[12]  On the other hand, expert witnesses or witnesses who are retained by a party to testify carry little weight because they "are usually selected because of their reputation and special knowledge  . . . without regard to their residences and are presumably well compensated for their attendance, labor and inconvenience, if any."  <u>See</u> <u>Webster-Chicago Corp. v. Minneapolis-Honeywell Regulator Co.</u>, 99 F. Supp. 503, 505 (D. Del. 1951).

Defendants maintain that they have several key non-party witnesses, including the owners of the store location in Worcester, the store owners' attorney, Defendants' accountants, a Massachusetts Division of Banks representative, and someone named Roy Bubbs.  (Defs.' Mem. Supp. Mot. Dismiss or Transfer Venue 11; Cox Aff. ¶ 14.)  Defendants expect those witnesses to testify that Defendants proceeded in good faith to negotiate their purchase of the Worcester store and to undertake appropriate due diligence in connection with the potential purchase.  (<u>Id.</u>)

Plaintiff has not identified any non-party witnesses that it might call in its case, aside from its employees.  Plaintiff does, however, argue that the testimony of Defendants' proposed witnesses will be barred by Pennsylvania's parol evidence rule, and that it is irrelevant to Defendants' counterclaims or defenses.  (Pl.'s Resp. Opp'n Mot. Dismiss or Transfer Venue 6–7.)  Plaintiff essentially argues that any proposed testimony regarding Defendants' "rightful rejection" of a site "confuses the issues, is impermissible[,] and is a waste of the Court's time" and should not factor into the Court's analysis of whether to transfer venue.  (<u>Id.</u> at 7.)  As the Court does not make any findings with respect to the merits of Plaintiff's claims or Defendants' counterclaims in connection with its consideration of Defendants' request for transfer of venue,

---

[12] Under this factor, party witnesses or witnesses who are employed by a party have little impact on the "balance of convenience" analysis since each party is obligated to procure the attendance of its own employees for trial.  <u>Id.</u>

the Court considers only that Defendants claim to have non-party witnesses who are located in Massachusetts.  Accordingly, Plaintiff's argument regarding the impermissibility of testimony by those witnesses does not weigh against transfer, and Defendants' identification of non-party witnesses located in Massachusetts weighs in favor of transfer.

### 6.   Location of Books and Records

The final private factor the Court considers is the location of books and records.  As recognized in other cases, "the technological advances of recent years have significantly reduced the weight of this factor in the balance of convenience analysis."  Lomanno v. Black, 285 F. Supp. 2d 637, 647 (E.D. Pa. 2003) (quoting Am. High-Income Trust v. AlliedSignal, Inc., No. Civ.A.00-690, 2002 WL 373473, at *5 (D. Del. March 7, 2002) (citations omitted)); see also 15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3853 (3d ed. 2010) ("[S]ince most records and documents now can be transported easily or exist in miniaturized or electronic form, especially, for example, the ubiquitous e-mail, their location is entitled to little weight.  This is particularly true with the development of photoduplication, facsimile transmission, the Internet, and the easy availability, excellent reproducibility, and relatively low cost of hard and electronic copies.").  This factor should thus be limited to the extent that the files could not be produced in the alternative forum.  Jumara, 55 F.3d at 879; see also 15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3853 (4th ed.) ("For example, perhaps transfer means that documents and things will be within the subpoena power of the transferee court.").

Defendants claim that the financial records of the proposed store-location are not subject to Pennsylvania subpoena power.  (Defs.' Mem. Supp. Mot. Dismiss or Transfer Venue 12.)

Plaintiff makes no argument regarding this factor.  Thus, while this factor may weigh slightly in favor of transfer, it has no significant impact on the Court's decision.

### B.    Public Interests

As noted above, the public interest factors include:  (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases.  Jumara, 55 F.3d at 879–80.  Defendants only address factors (3), (4), and (6).  Plaintiff only addresses factor (4). Accordingly, the Court will only discuss factors (3), (4), and (6) as raised by the parties.[13]

### 1.    The Relative Administrative Difficulty in the Two Fora Resulting from Court Congestion

The third factor—the relative backlog and caseloads of the two districts—supports a transfer of venue.  According to Defendants, 2013 Federal Judicial Caseload Statistics show that the District of Massachusetts had 3,082 new case filings, while the Eastern District of Pennsylvania had 10,423 new case filings.  (Defs.' Mem. Supp. Mot. Dismiss or Transfer Venue 12.)  It should be noted that, for all practical purposes, the calendar of this Court is not so full as to deny the parties prompt and thorough consideration of their case.  Nonetheless, the seemingly lighter case volume in the District of Massachusetts weighs slightly in favor of transfer.  See Hardaway Constructors, Inc. v. Conesco, 583 F. Supp. 617, 621–22 (D.N.J. 1983) (transferring venue from New Jersey to Maryland because, in part, Maryland's docket was "lighter" than New

---

[13] The first and second factors do not weigh in favor of or against transfer, because a judgment from a federal in court in Pennsylvania is as enforceable as a judgment from a federal court in Massachusetts, and because the ease, practicality, and costs of the litigation proceeding in one forum versus the other have already been discussed above.  The fifth factor does not weigh in favor of or against transfer, since both fora presumably have similar public policies regarding private contracts.

Jersey's); <u>Solomon v. Cont'l Am. Life Ins. Co.</u>, 472 F.2d 1043, 1047 (3d Cir. 1973) (fact that District of New Jersey had 353 cases per judge and Middle District of North Carolina had 177 cases per judge weighed in favor of transfer).  Plaintiff does not dispute the figures Defendants submitted and does not make any argument in response.  Accordingly, this factor weighs slightly in favor of transferring this case to the District of Massachusetts.

### 2.   <u>The Local Interest in Deciding Controversies at Home</u>

Plaintiff maintains that Pennsylvania has a greater interest in deciding this case, because (1) the events giving rise to Plaintiff's lawsuit "occurred either through interstate communications or personal communications in Pennsylvania;" (2) the parties contracted in Pennsylvania; and (3) the contract includes a choice of law clause electing to apply Pennsylvania law.  (Pl.'s Resp. Opp'n Mot. Dismiss or Transfer Venue 5.)  Plaintiff's first reason ignores the fact that the "interstate communications" between Plaintiff and Defendants also occurred in Massachusetts.  Plaintiff's second reason contradicts the statements in Defendant Jay Cox's affidavit that Defendants signed the contract in Massachusetts.  (<u>See</u> Cox. Aff. ¶ 7.)  Plaintiff's third reason demonstrates only that the drafters of Plaintiff's contract desired that Pennsylvania law apply to any contract disputes that might arise.  It is not evidence that the Commonwealth of Pennsylvania necessarily has any interest in adjudicating potential disputes that arise between Plaintiff, a Delaware corporation operating out of Pennsylvania that conducts business both nationally and internationally, and parties located outside Pennsylvania.  Plaintiff argues further that Pennsylvania has an interest in holding defendants answerable in a breach of contract action when its law is applied (Pl.'s Resp. Opp'n Mot. Dismiss or Transfer Venue 5), but this generalized argument fails to take into account the particular facts of this case.  Accordingly, Plaintiff's arguments do not weigh against transfer.

Defendants' arguments are equally unavailing.  They argue that public interest supports adjudication of this case in Massachusetts, because the business would have operated in Massachusetts in an industry that creates greater public policy concerns regarding "check cashing" and "payday loans" for Massachusetts than for Pennsylvania.  (Defs.' Mem. Supp. Mot. Dismiss or Transfer Venue 12–13.)  In response to Plaintiff's local interest arguments, Defendants point out that "[t]he parties contemplated and the contract provided that [Plaintiff] would grant and [Defendants] would own and operate a licensed and regulated FFC franchise in Worcester County, Massachusetts, servicing Massachusetts consumers and businesses, under governing Massachusetts law."  (Defs.' Reply 4.)  While that may be true, Plaintiff's claims and Defendants' counterclaims concern alleged contractual breaches which prevented any such activity from occurring.  Accordingly, Defendants' arguments do not weigh in favor of transfer.

With respect to the parties' arguments in favor of and against transfer, this factor is neutral.  Nonetheless, in light of the fact that the events giving rise to Defendants' alleged breach of contract primarily took place in Massachusetts, the Court finds that this factor weighs in favor of transfer to the District of Massachusetts.

### 3.  Familiarity of the Trial Judge with the Applicable State Law

The parties dispute whether Pennsylvania or Massachusetts law applies under the circumstances of this case.  Assuming, arguendo, that the choice of law clause is valid, that it governs the circumstances presented in this case, and that Pennsylvania law applies both to Plaintiff's claims and to Defendants' counterclaims for breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment, a United States District Court judge in the District of Massachusetts would be more than capable of applying Pennsylvania state law in this breach of contract case.  By contrast, Defendants' fourth counterclaim under the

18

Massachusetts Consumer Protection Act would likely be more appropriately handled by a trial judge located in Massachusetts.  Accordingly, this factor weighs in favor of transfer to the District of Massachusetts.

### C.      <u>Conclusion</u>

For all of the foregoing reasons, the District of Massachusetts is the most appropriate venue for this case.  The matter arises out of Defendants' alleged conduct which occurred primarily in Massachusetts.  Most of the witnesses thus far identified by the parties are in Massachusetts.  Finally, Defendants' travel, logistical, and cost considerations, as well as issues of court congestion, all point to Massachusetts as the most convenient situs for further litigation of this matter.  Accordingly, the Court will grant Defendants' Motion and transfer this case as requested.

An appropriate order follows.